NOTICE: NOT FOR OFFICIA PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

FREDDY AVERY PADILLA, *Appellant*.

No. 1 CA-CR 19-0210
FILED 4-7-2020

Appeal from the Superior Court in Maricopa County
No. CR2018-100001-001
The Honorable John Christian Rea, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mark E. Dwyer
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge David B. Gass delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

---

**G A S S**, Judge:

¶1          Freddy Padilla (Padilla) appeals a conviction from the superior court on one count of misconduct involving weapons. Because the superior court did not abuse its discretion when it denied Padilla's request for a mere presence jury instruction, this court affirms Padilla's conviction and sentence.

## FACTUAL AND PROCEDURAL HISTORY

¶2          On the evening of December 31, 2017, Phoenix police officers Ivan Villafana (Villafana) and Seth Fretheim (Fretheim) responded to a 911 call reporting a subject with a gun. The officers responded to the call and found a man and car matching the description in the 911 call. The car was parked at a gas station's southernmost pump. Officer Jeremy Ennis (Ennis) pulled alongside the patrol car and assisted Villafana and Fretheim in a high-risk stop.

¶3          Padilla appeared to be the sole occupant of the car. The officers ordered Padilla out of the car. After Villafana gave several loud commands to Padilla to come out with his hands up, Padilla hesitated to leave the car. Padilla opened the door partially and bent his upper body over at the waist "either manipulating or reaching or dropping something in between his feet" or in the general area. Padilla was arrested upon exiting the car.

¶4          After Padilla was detained, Ennis approached the car from the driver's side to clear it and make sure no one else was inside. Ennis could plainly see a black and gray handgun underneath the seat from the outside of the vehicle. The gun was in the same area Villafana saw Padilla reach and drop something.

¶5          Padilla was taken to the Central City Precinct Station and advised of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Padilla agreed to speak to Ennis first at the scene of the arrest and later

while he was detained at the Central City Precinct Station. While he was interviewed at the scene of the arrest, Padilla acknowledged the gun lying underneath the front driver's seat was his. Padilla further acknowledged he was not supposed to have a gun. In a subsequent interview by Detective George Fulton, Padilla admitted he got the gun "off the street" and paid "roughly 200" for it.

¶6          On January 10, 2018, the State indicted Padilla on one count of misconduct involving weapons, a class 4 felony. The State alleged Padilla knowingly possessed a deadly weapon while being a prohibited possessor. The State subsequently filed an allegation of historical prior felony convictions. The parties later stipulated Padilla was a prohibited possessor when he was arrested.

¶7          At trial, the defense requested a jury instruction on "mere presence." The defense argued the mere presence instruction was relevant for the jury to consider in a weapon possession case. The superior court found the instruction did not apply to Padilla's case and could potentially mislead the jury. The superior court, therefore, denied Padilla's request.

¶8          The trial lasted three days. Padilla did not testify. The jury found Padilla guilty of misconduct involving weapons. During a subsequent hearing, the superior court determined Padilla had two historical prior felonies. Padilla was sentenced to a minimum term of eight years in prison with 88 days pre-sentence incarceration credit.

¶9          Padilla filed a timely notice of appeal. This court has jurisdiction under A.R.S. § 120.21(A)(1).

**ANALYSIS**

¶10          This court reviews the denial of a requested jury instruction for an abuse of discretion. *State v. Wall*, 212 Ariz. 1, 3, ¶ 12 (2006). This court "will only reverse the superior court's decision if the jury instructions, taken together, would have misled the jurors." *State v. Doerr*, 193 Ariz. 56, 65, ¶ 35 (1998). No reversible error occurs if the instructions as a whole adequately cover the law. *Id*. A requested jury instruction is proper so long as the evidence reasonably supports it. *State v. Shumway*, 137 Ariz. 585, 588 (1983).

¶11          The RAJI mere presence instruction states:

> Guilt cannot be established by the defendant's mere presence at a crime scene, mere association with another

person at a crime scene or mere knowledge that a crime is being committed. The fact that the defendant may have been present, or knew that a crime was being committed, does not in and of itself make the defendant guilty of the crime charged. One who is merely present is a passive observer who lacked criminal intent and did not participate in the crime.

RAJI (Criminal) Stand. 43 (4th ed. 2016).

¶12 The mere presence instruction, if requested, is required in accomplice liability cases based on actual presence. *State v. Noriega*, 187 Ariz. 282, 286 (App. 1996). The mere presence instruction may be used in cases not involving accomplice liability, but is not required. *See id.* Here, the superior court denied Padilla's request for a mere presence instruction because the jury instructions were adequate and the mere presence instruction had the potential to mislead the jury.

¶13 The crux of Padilla's defense is he did not knowingly possess a firearm because he did not know the gun was in the car. The jury instructions stated they could find Padilla guilty of misconduct involving weapons only if the they found "[t]he defendant knowingly possessed a deadly weapon." The jury instructions further provided a definition of "knowingly" and identified different types of "possession." As such, the instructions adequately took Padilla's defense into account. By its verdict, the jury found Padilla "acted with awareness" when he "exercised dominion and control over" the gun. Given the facts here, the jury instructions were sufficient, and a mere presence instruction was unnecessary.

¶14 The superior court also found the mere presence instruction could potentially mislead the jury. The superior court "need not give an instruction that is covered adequately by other instructions, and should reject a proffered jury instruction that misstates the law or has the potential to mislead or confuse the jury." *State v. Musgrove*, 223 Ariz. 164, 167, ¶ 6 (App. 2009) (citation omitted); *see also Doerr*, 193 Ariz. at 65, ¶ 35.

¶15 The wording of the mere presence instruction here implied a crime was already committed, or the defendant happened to be present at a crime scene. This wording did not apply to this case. Padilla was convicted of misconduct involving weapons because he was a prohibited possessor who was in possession of a firearm. He did not come across a crime scene or associate with someone committing a crime. Padilla's

possession of the weapon was the crime. The mere presence instruction potentially could confuse the jury, leaving it to wonder whether a second crime was involved. The superior court, therefore, did not abuse its discretion when it found the mere presence instruction could mislead the jury.

## CONCLUSION

¶16        Because the superior court did not abuse its discretion when it denied Padilla's request for a mere presence instruction, this court affirms Padilla's conviction and sentence.

